FILED
IN OPEN COURT

MAY 12 2025

CLERK, U.S. DISTRICT COURT
NEWPORT NEWS, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CRIMINAL NO. 4:25-cr-32 |
| v. | ) |
| | ) 18 U.S.C. §§ 1040(a)(2) and 2 |
| KHYMARR TALIB COOPER, | ) Fraud in Connection with Major Disaster |
| | ) Benefits |
| Defendant. | ) (Count 1) |
| | ) |
| | ) 18 U.S.C. §§ 1343 and 2 |
| | ) (Wire Fraud) |
| | ) (Counts 2-5) |
| | ) |
| | ) 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461 |
| | ) Criminal Forfeiture |

INDICTMENT

May 2025 Term – at Newport News, Virginia

GENERAL ALLEGATIONS

At all times relevant to the Indictment:

1. KHYMARR TALIB COOPER, the defendant herein (hereinafter "COOPER"), resided in Newport News, Virginia, in the Eastern District of Virginia.

2. Unemployment Insurance ("UI") is a joint state-federal program that is intended to provide temporary financial assistance to unemployment workers who are unemployed through no fault of their own. The federal UI trust fund finances the costs of administering unemployment insurance programs, loans made to state unemployment UI funds, and fifty percent of extended benefits during periods of high unemployment. States can borrow from the federal fund if their own reserves are insufficient. Each state, including the Commonwealth of Virginia, administers a separate UI program, but all states follow the same guidelines established by federal law.

3. In March 2020, the United States was in the midst of the coronavirus ("COVID-19") pandemic, which resulted in the shutdown of numerous businesses and caused millions of American workers to be out of work. On March 12, 2020, the President declared a national emergency under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S. §§ 5121 et seq. ("Stafford Act"). On March 18, 2020, the President signed into law the Families First Coronavirus Response Act ("FFCRA"), which provided additional flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. The CARES Act expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic. The CARES Act dedicated over $250 billion to give workers more access to unemployment benefits during the public health emergency.

4. The CARES Act expanded unemployment benefits during the pandemic by (1) making those benefits available for those who have not traditionally qualified, such as contractors, self-employed, and gig workers and (2) substantially increasing the amount of money paid to those who qualify for unemployment benefits.

5. As of April 18, 2020, the President had declared that a major disaster exists in all States and territories under Section 401 of the Stafford Act. On August 8, 2020, to further offset the pandemic's impact on American workers, the President authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Funds for lost wage payments. The President authorized the FEMA Administrator to provide grants to participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA") to those receiving unemployment insurance.

6.   The Virginia Employment Commission ("VEC") is responsible for administering the unemployment compensation program in the Commonwealth of Virginia. This unemployment compensation program provides temporary financial assistance to individuals who become unemployed through no fault of their own. Specifically, prior to the expanded COVID-19 benefits described below, eligible recipients received a minimum of $158 per week in traditional UI benefits.

7.   The VEC divided the employment compensation program into the following four UI benefit components based upon the CARES Act and the FEMA LWA authorization:

   a.   Federal Pandemic Unemployment Compensation Program ("FPUC") – The CARES Act increased benefits for workers collecting UI by $600 per week for claims effective on or about April 5, 2020, through on or about July 31, 2020, thereby increasing the weekly benefit to $758 per week.

   b.   Pandemic Unemployment Assistance ("PUA") – The CARES Act expanded unemployment benefits for individuals who did not qualify for traditional UI benefits, including the self-employed, independent contractors, and gig workers. The PUA benefit expansion applied to weeks of unemployment from on or about January 27, 2020, through on or about December 31, 2020.

   c.   Pandemic Emergency Unemployment Compensation ("PEUC") – The CARES Act provided up to 13 weeks of unemployment insurance benefits to those who have exhausted their eligibility and applied to weeks of unemployment from on or about April 5, 2020, through on or about December 31, 2020.

   d.   LWA – The FEMA LWA authorization provided an additional $300 per week to claimants in Virginia who are eligible for at least $100 per week in unemployment insurance compensation. For claimants in Virginia, LWA was automatically paid out in one lump sum of $1,800 on or about October 19, 2020, covering the time period between on or about July 25, 2020 (when the $600/week PUA benefits expired), and September 5, 2020, so long as the claimant had certified unemployment eligibility during that time period. LWA funds are federal monies, but their distribution was administered by the VEC.

8.   Unemployed workers in the Commonwealth of Virginia can file for UI benefits either by phone or through the VEC online portal. To be eligible for UI benefits, the claimants must have been separated from their employer or had their hours reduced by their employer.

9. The VEC application for a UI claim requires entry of personally identifiable information ("PII"), including the applicant's name, date of birth, social security number, address, and phone number. It also requires answering a series of questions to verify eligibility – namely, the applicant's work history, name of employer, reason for separation, and a certification that the applicant is ready, willing, and able to work. To qualify for PUA benefits, the applicant must further certify that they lost their job due to the COVID-19 pandemic.

10. Once the VEC approves a UI claim, claimants must recertify their unemployment status on a weekly basis. The claimant must certify that they are ready, willing, and able to work each day during the weeks they claimed UI. Both initial applications and weekly recertifications are attested to as truthful under penalty of perjury.

11. Successful applicants may choose whether to have VEC deposit their unemployment benefits directly in a linked bank account or loaded onto a prepaid debit card (called "Way2Go" cards) which are shipped to the applicant via the United States Postal Service ("USPS") to the physical address listed on the application. For applicants who choose a debit card, a Personal Identification Number ("PIN") for the card is sent to the address listed on the application in a separate mailing. Prepaid debit cards are automatically reloaded with newly disbursed funds via electronic transfers using the Internet.

12. Under the CARES Act, the VEC approved PUA benefits for workers who normally would not qualify for UI benefits, to include the self-employed, freelancers, and independent contractors. Such workers typically do not have a wage history for the VEC to verify. Based on this PUA change, the VEC had to rely on and trust the information provided by the claimant as the VEC could not quickly verify the information. In an effort to ensure workers who were unemployed due to the pandemic received their benefits in a quick manner, the VEC processed

and paid out these claims shortly after the claims were submitted. The VEC did not initially require any documentary evidence to be provided in support of the application for benefits.

13. On or about May 14, 2020, COOPER submitted a fraudulent claim for unemployment benefits from the VEC representing that he was employed at 9LYVZ Apparel.

14. Among other things, COOPER falsely represented his employment history and that he lost his job because of the COVID-19 pandemic. COOPER continued to recertify that he was eligible for these benefits through April of 2021.

15. To make a payment to COOPER's account at Navy Federal Credit Union, the VEC server in Sandston VA, in the Eastern District of Virginia sent a wire transfer of information to a Suntrust Bank server located in Atlanta Georgia, instructing Truist (formerly SunTrust Bank) to move money from the VEC Trust Fund account to a VEC Payments Account. Truist ( formerly SunTrust Bank) then created electronic transfers through ACH to COOPER's direct deposit account on file which was detailed on the originating ACH file as Navy Federal Credit Union, which has servers in the Eastern District of Virginia.

16. There is no record at the Virginia Department of Taxation of 9LYVZ Apparel filing business tax returns for 2019, 2020, 2021, 2022, and 2023.

17. There is no record at the Virginia Department of Taxation of COOPER filing personal income tax returns for 2019, 2020, 2021, 2022, and 2023.

18. The Virginia Employment Commission has no record of reported wages for 9LYVZ Apparel from in or about January 2019 to in or about January 2022.

19. Between or about May 2020 and in or about April 2021, the defendant obtained approximately $23,452.00 in unemployment benefits from the VEC.

## THE SCHEME AND ARTIFICE

20. The object of the scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises was for COOPER to obtain unemployment benefits for which he was not legally eligible.

21. It was part of the scheme and artifice to defraud that the COOPER submitted a false application for unemployment benefits to the Virginia Employment Commission by misrepresenting his work history and the impact of the COVID-19 public health emergency on his employment status.

22. It was further a part of the scheme and artifice to defraud that the defendant caused the VEC to disburse approximately $23,452.00 between in or about May 2020 and April 2021, in unemployment benefits.

23. It was further part of the scheme and artifice that the defendant caused electronic transfers of information to occur between locations in the Eastern District of Virginia and terminals and/or computer servers located outside the Commonwealth of Virginia.

## COUNT ONE
(Fraud in Connection with Major Disaster Benefits)

THE GRAND JURY CHARGES THAT:

1. The factual allegations contained in the General Allegations section (including "The Scheme and Artifice" section) are incorporated herein by reference as if set out in full.

2. Between on or about May 10, 2020 and on or about August 9, 2020, in the Eastern District of Virginia, KHYMARR TALIB COOPER, the defendant herein, knowingly made materially false, fictious and fraudulent statements and representations, in that:

    a. Using VEC's online portal, the defendant submitted an initial claim for unemployment benefits.

    b. The defendant falsely reported that he was scheduled to commence employment, did not have a job, was unable to reach his job as a direct result of COVID-19, and his place of employment had closed as a direct result of COVID-19.

    c. In subsequent weekly certification the defendant falsely reported that he was separated from his job for the following reason: self-employed/independent contractors/1099.

    d. The defendant also falsely reported that for the week ending August 8, 2020, he did not receive any other monetary compensation.

3. The aforesaid attestations occurred in a matter involving a benefit, that is, a record, voucher, payment, money or thing of value, good or service, right, or privilege provided by the United States, a State or local government, or other entity, that was authorized, transported, transmitted, transferred, disbursed and paid in connection with a major disaster declaration under Section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act. Specifically, as a result of the false attestations, the defendant received unemployment insurance funds.

4. The authorization, transportation, transmission, transfer, disbursement and payment of the above-described benefits was in and affected interstate and foreign commerce, and the above-described benefit was a record, voucher, payment, money, and thing of value of the United States, and of a department and agency thereof.

(In violation of Title 18, United States Code, Sections 1040(a)(2) and 2.)

## COUNTS TWO THROUGH FIVE
(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained in the General Allegations section (including "The Scheme and Artifice" section) are incorporated herein by reference as if set out in full.

2. On or about the dates and in connection with the application described below, KHYMARR TALIB COOPER, the defendant herein, aided and abetted by others known and unknown, having devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false, fraudulent, fictitious pretenses, representations, and promises, as described in paragraphs 20 to 23 above and incorporated herein by reference, and, for the purpose of executing the aforementioned scheme and artifice, in the Eastern District of Virginia and elsewhere, did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate commerce, the following certain signs, signals, and sounds, as set forth in the table below, to/from or through computers and terminals in the Eastern District of Virginia, from/to or through computers and terminals located outside of the Commonwealth of Virginia. These violations occurred in relation to, and involved benefits authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency—namely, the COVID-19 pandemic.

| COUNT | DATE (on or about) | TRANSACTION |
|---|---|---|
| 2 | August 11, 2020 | The deposit by wire transfer of $158.00 fraudulent unemployment benefits in the defendant's bank account (last four digits: 8453). |
| 3 | February 2, 2021 | The deposit by wire transfer of $2,448.00 fraudulent unemployment benefits in the defendant's bank account (last four digits: 8453). |
| 4 | March 30, 2021 | The deposit by wire transfer of $458.00 fraudulent unemployment benefits in the defendant's bank account (last four digits: 8453). |
| 5 | April 6, 2021 | The deposit by wire transfer of $458.00 fraudulent unemployment benefits in the defendant's bank account (last four digits: 8453). |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in Counts Two through Five of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e.).

(In accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).)

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

<u>United States v. Khymarr Talib Cooper</u>
Criminal No. 4:25-cr-____

A TRUE BILL:

**REDACTED COPY**

_____
FOREPERSON

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By: _____
Therese N. O'Brien
Assistant United States Attorney
United States Attorneys' Office
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Phone: (757) 591-4027
Fax: (757) 591-0866
Email: therese.o'brien@usdoj.gov